IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAYTE RYAN WELCH,

    Plaintiff,

v.

CARDINAL I.G.,

    Defendant.

OPINION and ORDER

Case No. 19-cv-1-wmc

---

JAYTE RYAN WELCH,

    Plaintiff,

v.

ABR STAFFING,

    Defendant.

Case No. 19-cv-6-wmc

---

JAYTE RYAN WELCH,

    Plaintiff,

v.

CARDINAL I.G.,

    Defendant.

Case No. 19-cv-827-wmc

---

Plaintiff Jayte Ryan Welch filed the above captioned, three civil rights lawsuits *pro se* under the Americans with Disabilities Act, 42 U.S.C. § 12112(a), and Title VII, 42 U.S.C. § 2000e-2(a)(1). In Case Nos. 19-cv-1 and 19-cv-6, Welch claims that: (1) defendants Cardinal I.G. and ABR Staffing discriminated against him based on his

1

disability by ending his work at Cardinal I.G. on October of 2018; and (2) ABR Staffing retaliated against him for seeking evidence in support of his first claim. In the more recently filed Case No. 19-cv-827, Welch claims that Cardinal I.G. also subsequently retaliated against him for filing the 19-cv-1 lawsuit against it.

Since Welch is seeking to proceed in all three cases without prepayment of the full filing fees, his complaints must be screened under 28 U.S.C. § 1915(e) to determine whether any portion is frivolous or malicious, fails to state a claim on which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. The court begins by noting that that these lawsuits should not have been filed separately, since they involve common defendants and questions of law and fact. Rather than requiring Welch to amend his complaint, however, the court will consolidate the actions pursuant to Federal Rule of Civil Procedure 42(a)(2). For reasons explained below, the court also concludes that he may proceed with his claim for disability discrimination against Cardinal I.G. and ABR Staffing, as well as with his retaliation claim against Cardinal I.G.

ALLEGATIONS OF FACT[1]

I.  Case Nos. 19-cv-1 and 19-cv-6

Although not specifically alleged, the court infers for purposes of screening that Welch was placed at Cardinal I.G. by ABR Staffing. Indeed, in Case No. 19-cv-1, Welch alleges that he began working for Cardinal I.G. in September of 2018 as a glass handler,

---

[1] In addressing any pro se litigant's complaint, the court must read the allegations generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). For purposes of this order, the court assumes the facts above based on the allegations in Welch's complaints and has incorporated additional information from the attachments to his complaint as necessary for context.

and in Case No. 19-cv-6, Welch also alleges that he started working for ABR Staffing at that time. In both of those complaints, Welch also claims that he was terminated from his employment on October 31, 2018, due to "absenteeism." However, he contends that his absences were due to his disabilities and related impairments, including valvular heart disease, endocarditis, MRSA and MRSA-related complications, as well as issues related to his gallbladder removal. He further claims that he provided doctors' notes for his absences but was nonetheless terminated.

With respect to ABR Staffing in particular, Welch alleges that after his termination in December of 2018, Welch went to obtain records from ABR Staffing. However, his request was denied, allegedly in retaliation for pursuing this lawsuit.

Finally, in Case No. 19-cv-6, Welch separately alleges that he is homosexual and was "subject to a frat house atmosphere" in which homosexuals were ridiculed, although he provides no context for those statements, including who made them and whether he alerted a supervisor or management at ABR Staffing about them.

II.     Case No. 19-cv-827

In his last filed lawsuit, Welch claims that representatives of Cardinal I.G. also retaliated against him for threatening to file a lawsuit, as well as for threatening to file complaints with the Office of Federal Contract Compliance Programs ("OFCCP") and EEOC. Specifically, Welch alleges that on November 21, 2018, he filed a complaint about his termination from Cardinal I.G., and he received a notice of his rights on December 3, 2018. On December 7, 2018, he issued a demand letter to Cardinal I.G., requesting

settlement negotiations. On December 14, 2018, he received a response letter from Cardinal I.G. That same day, Welch spoke with Cardinal I.G.'s counsel, David Waytz, over the phone. Welch describes his demeanor on the phone as friendly and believed that he and Cardinal I.G. came to a preliminary agreement that should the parties reach an actual settlement, Welch would agree not to file any other lawsuits against it. Waytz also asked Welch to reconsider his demand amount.

After that phone call, Welch conducted legal research and attempted to find an attorney but was unsuccessful. On December 24, 2018, he decided to file a lawsuit against Cardinal I.G., in part because he believed no substantive negotiations had taken place during his December 14 call with Waytz. That day, Welch emailed Waytz a list of the agencies with which he wanted to file a complaint, including the EEOC, OSHA and OFCCP. On December 28, 2018, a representative from Cardinal I.G. responded to his email, threatening criminal prosecution on the ground that his December 24, 2018, email amounted to extortion. That email response further indicated that Cardinal I.G. would be informing local police about Welch's communication.

Welch claims to have been so intimated by this response that he delayed submitting any of the agency complaints that he intended to pursue. Instead, Welch allegedly began emailing and calling Cardinal I.G., expressing his regret for what he had done, asserting that he had not intended to break any laws, and stating that he would drop all of his complaints. On January 2, 2019, however, Welch filed a complaint with the OFCCP, as well as his complaint in this court in Case No. 19-cv-1.

On January 7, 2019, Lieutenant Ron Waddell of the Tomah, Wisconsin, police department contacted Welch. Waddell informed Welch that he was being investigated for extortion, based on the December 24, 2018, email that he sent Cardinal I.G. As a result of the investigation, Welch experienced such severe anguish that he sought mental health treatment. Welch claims that after these feelings continued for multiple months, he proceeded to submit his EEOC complaint on April 9, 2019. Receiving a notice of his rights with respect to his retaliation claim on July 18, 2019, Welch also alleges that the police investigation did not result in criminal charges being filed against him.

OPINION

As alluded to above, in Case Nos. 19-cv-1 and 19-cv-6, plaintiff seeks to proceed against defendants on claims under the Americans with Disabilities Act. Additionally, in Case No. 19-cv-6, he appears to be seeking to proceed against ABR Staffing on an ADA retaliation claim and a Title VII sexual harassment claim. Finally, in Case No. 19-cv-827, he seeks to proceed against Cardinal I.G. on a claim of retaliation. The court addresses these claims in turn.

I.  **ADA Claim**

The ADA prohibits employers from discriminating against employees with disabilities who are otherwise qualified. 42 U.S.C. § 12112(a). The definition of "discriminate" in the act is broad and includes discrimination in all phases of employment, including the application process, hiring, advancement, and discharge of employees, as well

5

as employee compensation, job training, and other terms, conditions, and privileges of employment. *Id.* In order to prove disability discrimination under the ADA, however, plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job either with or without a reasonable accommodation; and (3) he suffered from an adverse employment action because of his disability. *Nese v. Julian Nordic Construction Co.*, 405 F.3d 638, 641 (7th Cir. 2005).

Under the lenient pleading standard for a *pro se* litigant, *Haines,* 404 U.S. at 521, the court will infer that plaintiff's various ailments rendered him disabled as defined by the ADA, and that he was qualified to work as a glass handler despite his disabilities. This leaves the third element of his claim: whether Cardinal I.G. or ABR Staffing discriminated against him in an employment setting because of his disability. Plaintiff contends that defendants wrongfully refused to excuse his absences from work caused by his disability, which the court will infer to mean that defendants failed to make any effort to provide a reasonable accommodation for his necessary absences, instead terminating him as a result of those absences. Accordingly, the court will grant plaintiff leave to proceed with his claim under the ADA, both against Cardinal I.G. in the 19-cv-1 case, and against ABR Staffing in the 19-cv-6 case.[2]

---

[2] The court realizes that there remains a fundamental question as to whether ABR Staffing or Cardinal I.G. was plaintiff's actual employer as defined by the ADA and whether he has an actionable claim against either if found not to be an employer, as well as whether plaintiff exhausted any administrative remedies before filing these lawsuits. However, these issues are for defendants to raise, either through motions to dismiss or for summary judgment.

**II.     Retaliation**

While plaintiff also seeks to proceed on a retaliation claim against ABR Staffing and Cardinal I.G., his allegations only support such a claim as to Cardinal I.G., and even that claim appears tenuous, albeit sufficient to proceed past the court's screening. The ADA prohibits an employer from retaliating against an employee for filing a charge with the EEOC related to disability discrimination. 42 U.S.C. § 12203. To prevail on a claim of retaliation, the plaintiff must prove that: (1) he engaged in protected conduct; (2) he suffered a materially adverse employment action; and (3) there was a causal connection between the two. *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001).

As an initial matter, the alleged retaliation by either defendant here occurred *after* Welch's employment had been terminated. Still, the Seventh Circuit has explained that "individuals are protected from retaliation by their former employers." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 667 (7th Cir. 2013) (citations omitted). In general, for such a retaliatory action to proceed under Title VII, the claimant must establish an *"impinge[ment] on their future employment prospects or otherwise … a nexus to employment."* *Ruedlinger v. Jarrett*, 106 F.3d 212, 214 (7th Cir. 1997) (quoting *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881 (7th Cir. 1996)) (italics in original). However, certain Seventh Circuit decisions appear to recognize the existence of a retaliation claim in adverse actions unrelated to employment. *See Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 745 (7th Cir. 2002) (noting that Title VII's "provision regarding retaliation may intentionally be broader, since it is obvious that effective retaliation against employment discrimination need not take the form of a

7

job action") (quoting *McDonnell v. Cisneros*, 84 F.3d 256, 258-59 (7th Cir. 1996)); *Aviles v. Cornell Forge Co.*, 183 F.3d 598 (7th Cir. 1999) (employee stated Title VII retaliation claim based on employer's alleged false report to the police that employee was "armed and [ly]ing in wait" outside the employer's building). Given that the retaliation provisions of Title VII (42 U.S.C. § 2000e-3(a))) and the ADA are similarly broad insofar as neither statute expressly prohibits "job-related" discrimination only, it would appear there may be room to argue that retaliatory conduct need not be job-related, at least for purposes of meeting the lenient pleading standard required by the ADA, especially for purposes of an initial screening. *See Gore v. Trustees of Deerfield Academy*, 385 F. Supp. 2d 65, 72, 70 n.3 (D. Mass. 2005) (citing to *Aviles*, 183 F.3d 598, and other decisions for the proposition that the adverse action need not be employment-related under Title VII or the ADA).

Keeping these limitations in mind, the court turns to plaintiff's two, specific claims of retaliation. In Case No. 19-cv-6, plaintiff seeks to pursue a retaliation claim against ABR Staffing, which fails as the second element. In December of 2018 when plaintiff requested the documents from ABR Staffing, he had already been terminated. Plaintiff has not alleged that ABR Staffing's failure to provide his employment records had any negative impact on him with respect to future employment. Nor has plaintiff suggested that his inability to obtain his records had any impact on his ability to pursue his EEOC complaint. Furthermore, in the Title VII context, the Seventh Circuit has held that "[a]n attempt to obstruct the litigation of the underlying discrimination complaint, like oppressive discovery requests and the withholding of other evidence, is inseparable from the litigation of the claim. Accordingly, it is a matter to be resolved pursuant to court rules,

8

not by Title VII." *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 486 (7th Cir. 1996). Since plaintiff's allegations do not otherwise allude to a materially adverse action taken by ABR Staffing, the court will not grant plaintiff leave to proceed on a retaliation claim against it.[3]

As for plaintiff's retaliation claim against Cardinal I.G. in Case No. 19-cv-827, which is based on its attorney reporting his email to the police, the court will allow it to proceed for now. As an initial matter, while the Seventh Circuit has stated that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by [Title VII and the ADA]," *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998), the court declined in that same decision to adopt a "litigation privilege" with respect to retaliation claims brought under Title VII and the ADA. Indeed, as previously noted, the Seventh Circuit has specifically allowed a retaliation claim to proceed, if only in the Title VII context, against a former employer who allegedly lodged a false report to the police that a former employee was "armed and [ly]ing in wait" outside the employer's building. *Aviles*, 183 F.3d 598.

Given plaintiff's claim here that Cardinal I.G. was responsible for pursuing a spurious criminal investigation against him, causing him extreme mental anguish, the court accepts that plaintiff may be able to satisfy the adverse action element, at least for pleading purposes. The court further accepts that the decision to inform the police about his letter may have been motivated by a desire to discourage plaintiff from pursuing the various

---

[3] Even so, this ruling will not preclude plaintiff from seeking to amend if he can allege some material adverse action by ABR.

complaints he was then contemplating filing. Accordingly, the court will grant plaintiff leave to proceed on his ADA retaliation claim against Cardinal I.G.

### III. Sexual Harassment

Finally, plaintiff has simply not alleged sufficient facts to proceed with a claim related to alleged comments by other employees about homosexuals. Certainly, Title VII prohibits employers from harassing employees "because of [their] sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78–79 (1998); 42 U.S.C. § 2000e–2(a)(1). Moreover, the Supreme Court has expressly held that this prohibition extends to sexual orientation discrimination as well. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020) ("[D]iscrimination based on homosexuality or transgender status necessarily entails discrimination based on sex."); *see also Hively v. Ivy Tech Community College of Indiana*, 853 F.3d 339 (7th Cir. 2017). To prove sexual harassment under Title VII, however, a plaintiff must demonstrate that: (1) he experienced unwelcome harassment; (2) the harassment was based on sex (in this case, sexual orientation); (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abuse environment; and (4) a basis for employer liability exists. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007).

To begin, albeit offensive, the Seventh Circuit has held that "[t]he 'occasional vulgar banter, tinged with sexual innuendo . . . or boorish workers' generally does not create a work environment that a reasonable person would find intolerable." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 941 (7th Cir. 2007) (citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d

10

428, 430 (7th Cir. 1995)). Regardless, it is well-recognized that Title VII does not authorize this court to enforce a "general civility code" in the workplace. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81, 118 S. Ct. 998 (1998). As a result, plaintiff's general allegation that some other people may have at some point "ridiculed" homosexuals does not by itself support an inference that the comments were so severe or pervasive to have been intolerable.

Even if this allegation is sufficient to meet the minimal pleading standard applicable to hostile work environment or harassment claims, *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014), plaintiff's allegations suggest that he has *no* basis to hold ABR Staffing liable for this conduct. Indeed, where the harasser is a co-worker, the employer can assert an affirmative defense by showing that it: (1) "exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities that the employer provides. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998) (employer may escape liability if it took reasonable care to prevent and promptly correct the offending behavior); *Silk v. City of Chi.,* 194 F.3d 788, 805 (7th Cir. 1999) (same). Here, plaintiff affirmatively alleges that no one at Cardinal I.G. knew he was gay. As for ABR Staffing, plaintiff has not alleged that he alerted any ABR Staffing employee in a position to overhear, much less correct any of the behavior; nor has he alleged that he alerted a superior to the inappropriate comments and that there was a failure to take corrective action. Normally, a plaintiff need not plead around a possible affirmative defense, but in combination with the lack of sufficient allegations allowing an inference of

a truly severe or pervasive comments sufficient to create a hostile or abuse work environment, this defense is at least worse mentioning. Still, as with the denial of leave to proceed with respect to his retaliation claim against ABR Staffing, plaintiff will have an opportunity to seek to amend his complaint to provide the necessary allegations to proceed, if he can do so in good faith. Absent that, however, plaintiff may not proceed on a hostile work environment claim against ABR Staffing related to any alleged negative comments he overheard about homosexuals.

ORDER

IT IS ORDERED that:

1. Pursuant to Federal Rule of Civil Procedure 42(a), the clerk of court is directed to consolidate Case Nos. 19-cv-1, 19-cv-6, and 19-cv-827.

2. Plaintiff Jayte Ryan Welch is GRANTED leave to proceed on his claims that defendants Cardinal I.G. and ABR Staffing discriminated against him based on his disability, and that Cardinal I.G. retaliated against him for filing a complaint about that discrimination, both in violation of the Americans with Disabilities Act.

3. Plaintiff is DENIED leave to proceed on any other claim.

4. For the time being, plaintiff must send defendants a copy of every paper or document he files with the court. Once plaintiff has learned what lawyer will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard any documents submitted by plaintiff unless plaintiff shows on the court's copy that he has sent a copy to defendants or to the defendants' attorney.

5. Plaintiff should keep a copy of all documents for his own files. If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

6. The clerk's office will prepare summons and the U.S. Marshal Service shall affect service upon defendants.

7. If plaintiff changes his address while this case is pending, it is his obligation to inform the court of his new address. If he fails to do this and defendants or the court is unable to locate him, his case may be dismissed for failure to prosecute.

Entered this 24th day of November 2021.

                    BY THE COURT:

                    /s/

                    WILLIAM M. CONLEY
                    District Judge